COLBY WRINGER CO. *v.* COON

1. PRINCIPAL AND SURETY—INDEMNITY BOND—CONSTRUCTION—DE-
   FAULT.

   The surety upon a bond of indemnity conditioned for the faith-
   ful performance by the principal of an agreement whereby he
   was to act as agent for the handling of the obligee's goods in
   certain territory, and was to account weekly, in specified sums,
   for all wringers and clocks sold by him, and for "other
   articles as per price list," and whereby the obligee was bound
   to furnish, not only wringers and clocks, but "such other
   goods" as might be further agreed upon,—is liable for the prin-
   cipal's default with respect to goods other than wringers and
   clocks which were furnished in accordance with the terms
   of the contract.

2. SAME—RELEASE OF SURETY.

   The surety upon such a bond is not relieved from liability be-
   cause the obligee failed to notify him that the agent was not
   remitting the full amounts shown to be due by his weekly
   reports, even though it subsequently develops that the defi-
   ciency was underreported, if the obligee had no notice of
   such dishonesty.

Error to Wayne; Frazer, J. Submitted January 25,
1898. Decided March 15, 1898.

*Assumpsit* by the Colby Wringer Company against
Edward S. Coon, as surety upon a bond of indemnity.
From a judgment for plaintiff, defendant brings error.
Affirmed.

Suit on a bond of indemnity. Plaintiff, a Vermont cor-
poration, made a contract with one Havens, by which he
was appointed sole manager or agent for plaintiff in the
city of Detroit to sell, upon terms and conditions fixed by
it, and collect payment for, such goods as should be fur-
nished to him. The defendant executed a bond to plaintiff
in the sum of $2,000 upon condition that—

"Said Havens shall well and faithfully discharge his duties as such agent or manager, and the trust reposed in him, and shall keep, and perform each and all the conditions, covenants, and obligations on his part entered into and contained in a certain agreement by and between him and said company [giving the date], * * * and shall also well and truly pay or cause to be paid to the said company, on demand, any and every indebtedness or liability now existing, or which may hereafter in any manner exist or be incurred, on the part of said Havens to said company."

Havens agreed to make weekly payments for collections and goods sold. He made reports from time to time of the business, the amount due, and remittances, but failed to pay over all that was due according to his reports. The amount due from Havens gradually increased, though he often remitted the amount due for goods sold during the period of the report. The first and second reports showed no amounts unremitted. The third report showed a balance unremitted of $15.88. This report was dated May 14, 1892. His last report was dated July 14, 1894, and showed a balance in his hands unremitted of $3,025.-80. Shortly after this last report, plaintiff's agent came to Detroit, and took charge of the business, and upon investigation found that Havens was in fact indebted for goods sold and moneys collected and unaccounted for in a sum largely in excess of the amounts reported. He thereupon notified the defendant of this fact, and, upon refusal to pay, brought suit, and recovered verdict and judgment for the amount of the bond.

*Walter Barlow*, for appellant.

*George W. Bates*, for appellee.

GRANT, C. J. (*after stating the facts*). 1. Defendant contends that he is not liable for anything but wringers and clocks specified in the contract. The third clause in the contract provides that Havens should pay $3 for each

No. 3 Colby wringer sold on installments, and $2.50 for each one sold for cash; $4 for each clock sold on installments, and $3.50 for each clock sold for cash. If the contract did not expressly cover other articles, the defendant's contention would be sound. The second clause, however, expressly provides that the plaintiff should furnish not only the goods mentioned in the third clause, but also "such other goods as may be further agreed upon by the parties hereto." The fourth clause, providing for payment, specifies the articles in the third clause, and also "others as per price list." The terms of the bond cover every obligation under the contract, and made the defendant liable for everything furnished in accordance with its terms. All the goods were so furnished.

2. It is urged that the court erred in instructing the jury that, if defendant understood the situation, there was no occasion to notify him. The objection is that there was no evidence to show such knowledge on the part of the defendant. Mr. Havens died soon after this suit was commenced. Defendant was not sworn as a witness. On March 5, 1894, plaintiff wrote Mr. Havens, asking if it would not be possible for him to arrange with his bondsman to raise an amount sufficient to square off his cash balance as it stood on his reports. It is fairly to be inferred from Havens' reply that he had informed defendant of the situation, and had attempted to borrow the money from him. This letter was produced by the defendant, and introduced in evidence without objection. No claim is made that the letter is not competent evidence of the matters therein stated. The only claim made is that, if Havens did apply to Coon for a loan of money to pay his indebtedness to plaintiff, this was not such a notice as would make him responsible on the bond. It cannot, therefore, be said that there was no evidence tending to show knowledge on the part of the defendant that Havens was running behind. The question, however, becomes immaterial in view of our holding on the next point.

3. The principal question in the case is, Was the defend-

ant relieved from liability by the failure of the plaintiff to notify him that Havens was behind in his payments? There is no evidence that plaintiff had any knowledge, or intimation even, that the accounts rendered by Havens were not correct.   Still the court left that question to the jury, instructing them that, if plaintiff had knowledge of dishonesty on the part of Havens, it was its duty to notify defendant, and that the failure to so notify him would be a complete defense, but that, if the plaintiff "allowed Havens to run along in a negligent manner, simply permitting him to go on, and was trying to get these amounts from him, this would not be sufficient to release the security, because the bond was given to cover just such a contingency."   The circuit judge correctly stated the law. *Ætna Ins. Co.* v. *Fowler.* 108 Mich. 557, and authorities there cited.

Judgment affirmed.

The other Justices concurred.